The Alpena National Bank v. Harris Greenbaum
and Nathan Epsteyn.

[See 44 N. W. Rep. 1123.]

*Bills and notes—Payment—Discharge of sureties—Trust.*

Where before the maturity of certain notes the maker failed, and
gave mortgages to the president of a bank, in his individual
name, to provide, among other things, for paper held by the
bank, including said notes, and the president collects and holds
in deposit, in the bank or in his hands, money enough to pay
the notes, and which is by the terms of the trust applicable to
such payment, the money belongs to the bank, which is bound
to collect and apply it, and cannot maintain a suit against the
indorsers on said notes.

Error to Alpena. (Emerick, J.)  Argued January 25,
1889.  Decided February 15, 1889.

*Assumpsit.*  Defendants bring error.  Reversed.  The
facts are stated in the opinion.

*Turnbull & Dafoe (Shields & McNamara,* of counsel),
for appellants.

*R. J. Kelley,* for plaintiff.

CAMPBELL, J.  Defendants were sued on two notes
made on June 21, 1883, and August 25, 1883, payable
each in four months from date, to the order of plaint-
iff's cashier; the principal of the two notes mak-
ing $2,177.19.  The notes were signed by the Prentiss
Lumber Company, and indorsed by Greenbaum and
Epsteyn, who by the form of the paper became liable as
sureties of the maker.  Before the notes matured the
principal maker failed, and gave mortgages to George L.
Maltz, the president and head of the plaintiff bank, but

in his individual name, to provide, among other things, for paper held by the bank, including that in suit. It appears that Mr. Maltz collected and holds in deposit, in the bank or in his hands, money enough to pay this paper, and which is by the terms of the trust applicable to such payment. The defendants relied on various defenses, partly resting on alleged conduct of the bank and its officers, inducing them to sign the paper by assurances of its safety, and partly on conduct which should discharge them as sureties.

We do not think it necessary to spend time on the other questions, because in our opinion the evidence showed payment of the paper. By the terms of the trust Mr. Maltz was required to pay this paper out of the funds realized. There was no discretion given him when the money was once in his hands. It belonged to the bank, and was its money. Under such circumstances, when the means are in the hands of the president and real manager of the bank, and need only entries on the proper books to balance the account, the bank has no right to delay such action, and is bound to collect and apply the money. If Maltz were a stranger, the bank would still be bound to see that the sureties were not prejudiced by leaving uncollected money specifically set aside by the principal debtor to pay the debt. But, when the officer bound to get the money is the same person who has the money, it would be a foolish and senseless theory which would permit the rights of sureties to be jeopardized by any such metaphysical distinction. From the case no one can question the real ability and duty of the bank to apply this money, while, if Maltz had been an outside party, the bank would still be responsible for not taking the money when it had a legal right to demand and get it, as well as the power to do so. We infer from the record that Mr. Maltz has

acted on advice or supposition that there was some legal difficulty in the case. But in this he has acted on an erroneous theory. The money in his hands belongs to the bank, and is devoted to payment of the paper, which includes the notes in suit here. It should be so applied, and, in consideration of the facts of record, it is in law a payment.

The rulings to the contrary are erroneous, and the judgment must be reversed, with costs of both courts, and a new trial granted. There is no occasion or reason, however, for going through another trial, which would be a wrong to the defendants, who should not be harassed further:

CHAMPLIN, MORSE, and LONG, JJ., concurred. SHERWOOD, C. J., did not sit.

On an application for a rehearing the following *per curiam* opinion was filed April 12, 1889:

PER CURIAM. A motion for a rehearing has been made in this case. It is based chiefly on the ground that the case as presented in this Court was in some respects erroneously presented. The order we made was for reversal and for a new trial, with the suggestion that upon the case as presented it would not be very equitable to insist upon a further trial. If a new trial had been refused after reversal, the motion for rehearing would be more pertinent. But a reversal was necessary under the record, and no reason is now shown that indicates any different result as called for. It is not for us to govern parties in the exercise of their legal rights in the circuit court below, or to anticipate how far, on a new trial, facts may be changed in appearance. But the order as entered is, in our opinion, the proper one, and we see no reason to change the views we expressed on the record before us.

The rehearing is denied.