No. 23,810.

THE GOODYEAR TIRE & RUBBER COMPANY, *Appellant*, v. THE HANOVER STATE BANK. et al., *Appellees*.

### SYLLABUS BY THE COURT.

TRUST FUNDS — *Proceeds of Check* — *Insolvency of Bank* — *Preferred Claim*. Where a bank holding a claim for collection receives in payment thereof a check upon itself drawn by the debtor against a sufficient deposit, there being enough cash on hand to meet it, charges the amount to him and attempts to remit it to the creditor by cashier's check, but passes into the control of a receiver before such cashier's check in due course of business is presented for payment, having at all times had cash on hand in excess of the amount thereof, the creditor is entitled to recover the amount of his claim from the assets of the receivership as a trust fund in preference to general creditors.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed November 12, 1921. Reversed.

*R. W. Blair, T. M. Lillard,* both of Topeka, and *R. L. Helvering,* of Marysville, for the appellant.

*Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: The Goodyear Tire & Rubber Company, of Akron, Ohio, held a trade acceptance—in effect a draft—for $1,364.50, on Poell Brothers, of Hanover, Kan., which was sent for collection to the Hanover State Bank, of that place. On May 13, 1920, the bank presented the draft to Poell Brothers, who gave in exchange for it their check upon the bank, where they carried a checking account sufficient to meet it, the bank having more than enough cash on hand for the purpose. The check was at once charged to the account of Poell Brothers, and the bank mailed its cashier's check for the amount to a bank in Chicago through which the collection had been received. On May 17, 1920, and before the cashier's check in the usual course of business had been presented to the Hanover State Bank for payment, that bank was closed, being taken charge of

by Dugald Spence, a deputy bank commissioner, who was afterwards appointed receiver. The rubber company brought this action against the Hanover State Bank and its receiver, asking that the receiver be adjudged to hold the amount of such draft (less a remittance charge) in trust for it, and that its claim be given preference over those of ordinary creditors. On an agreed statement of facts judgment was rendered declaring it to be a general creditor only, and it appeals. ·

The parties agree upon the test by which the matter is to be determined: In order for the plaintiff to have a preferred claim upon the estate in the hands of the receiver it must appear that the proceeds of the check in some form reached his hands, and that the assets brought under his control were larger by that amount than they would otherwise have been. While there has been much difference of judicial opinion on the subject, some of which still remains, that is now the generally accepted view (3 R. C. L. 638; 26 R. C. L. 1355; Notes, L. R. A. 1916C, 21, L. R. A. 1917F, 603), and the one adopted in this state. (*Investment Co. v. Bank,* 98 Kan. 412, 158 Pac. 68, and cases there cited.) The present controversy turns upon the application to be made of that test.

When the bank was closed it had $6,971.95 in cash and its books showed $54,444.58 in sight exchange, the actual amount being less than that, but in excess of fifty per cent of it. If Poell Brothers, instead of paying the draft upon them by check, had used currency for the purpose there can be no doubt that the receiver would hold the amount in trust for the plaintiff, for the total of cash or its equivalent which came into his hands would necessarily or at all events presumptively have been that much larger by reason of such payment. The court is of the opinion that the rule applies that where a payment to a bank is made by a check drawn thereon the result is the same as though the depositor had presented his check, received· the money over the counter, and then used it in making the payment. That rule has often been announced. (*Washbon v. Bank,* 87 Kan. 698, 125 Pac. 17; 2 Morse on Banks and Banking, 5th ed., § 451, and cases cited in note.) In *Bank v. Bank,* 62 Kan. 788, 64 Pac. 634, a situation was presented having at least some analogy to that now under consideration. There a bank which soon after failed, held for collection a check on

another bank in the same town which it used in effecting the daily clearing between the two banks, paying the difference in cash. The owner of the check sued to have his claim given a preference. The receiver urged that the failing bank had used the check merely to pay its indebtedness and therefor the estate to be administered had not been increased. His contention was denied, the court holding that the transaction involved what was in effect the collection of the check in cash.

The court is also of the opinion that the effect of Poell Brothers giving the bank their check in exchange for the draft upon them was the same as though they had drawn out the money at some other time, and for some other purpose, but had used it for paying the claim against them. It follows from these views that the money belonging to the plaintiff must be regarded as having passed into the hands of the receiver, increasing by that amount the assets to be administered by him, and that the plaintiff is entitled to reclaim it as a trust fund.

The judgment is reversed and the cause remanded with directions to render judgment for the plaintiff, giving it preference over general creditors.

MASON, J. (dissenting) : It is of course ordinarily true that the effect of making a payment to a bank by a check drawn upon it is the same as though the money had been physically delivered by the bank when the check was presented and then returned to it. Possibly that is always true when such a conception of the transaction is necessary to protect the rights of the person making the payment. But I do not think that rule is applicable to the present situation, nor do I think if applied it should warrant a judgment for the plaintiff. In my view the decision of the case should be controlled by these considerations: Money which is received by a bank as a collecting agent may be reclaimed by the principal from a receiver as a trust fund if by reason of it the assets to be distributed are that much larger than they would otherwise have been; the fact that the liabilities of the bank may have been diminished by the amount does not answer the purpose, for the liabilities of an insolvent corporation are not equivalent to cash. A sufficient reason for this distinction is that if the money belonging to someone else gets into the bank and so augments by that

Tire & Rubber Co. v. Bank.

amount the assets to be distributed among creditors, no one is injured by the episode if the money is restored to the owner; each creditor is just as well off as though the transaction had never taken place. But if the money has merely gone to the payment in full of a debt of the bank each other creditor will suffer more or less, according to the degree of disparity between the assets and liabilities. (*Investment Co. v. Bank,* 98 Kan. 412, 416, 158 Pac. 68.)

In the present case the assets that passed into the hands of the receiver were no larger than if the plaintiff had had no relations with the bank. The bank as the plaintiff's agent held for collection the draft against Poell Brothers. Poell Brothers drew their check on the bank for the amount and exchanged it for the draft. At the same instant and by the same act the bank's indebtedness to Poell Brothers was reduced and an obligation to the plaintiff for a like amount was created. The bank had exchanged one creditor for another. Its assets were in no way increased. It had enough cash on hand to pay the check if that had been demanded, but the business could and doubtless would have been done in precisely the same way if it had had no currency available, but only exchange—deposits in other banks. No change of the existing condition was contemplated except to transfer a credit from Poell Brothers to the plaintiff. Such theoretical withdrawal of money from the bank as may be conceived as taking place was solely by reason of the presentation of the draft and for the purpose of meeting it. The theory of an increase in assets can be given effect only by changing the transaction—by regarding an arrangement for the transfer from one person to another of money the bank was already holding as the bringing of new money to it; by separating what did take place into two acts which might have taken place and treating them as independent of each other.

The case of *Bank v. Bank,* 62 Kan. 788, 64 Pac. 634, is readily distinguishable. There the First State Bank of Marion held for collection a check for $1,400 on another bank in the same town. In its daily clearing with the other bank it turned in this check with other items. The clearing showed a balance against the First State Bank of $615.58, which it paid in cash —that is (the settlement being made at the other bank), by its cashier's check, which was paid the same day. If it had not

held the check for $1,400 the balance against it would have been $2,015.58, and it would have paid out in cash this amount instead of $615.58. So that its assets when the receiver took charge were $1,400 larger than they would have been if it had not held and collected the check for that amount.

BURCH, J., joins in the dissent.