No. 28,071.

THE BAKER-EVANS GRAIN COMPANY, *Appellee*, v. THOM RICORD, *Appellant*.

(267 Pac. 14.)

Opinion filed May 5, 1928.

*D. M. McCarthy,* of Mankato, for the appellant.

*J. Graham Campbell* and *Ray Campbell,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The question involved in this case is whether a debtor pays the creditor by giving his check on his account in the collecting bank when such bank is insolvent and unable to pay such check.

The plaintiff grain company, of Wichita, shipped corn in carload lots to the defendant, a grain dealer at Otego, Jewell county, sending the bills of lading, with drafts attached, to the Otego State Bank at Otego with instructions to deliver the same upon payment of the drafts. When the defendant was notified by the bank of the arrival of a bill of lading and draft, the defendant called and gave his check for the required amount on his account in that bank, and the bill of lading was delivered to him by the bank. There are three such transactions stated in the petition as three separate counts, in all of which the attempted payment was made by the defendant in the same way, and at each and all of these times he had a credit with the bank for more than the amount of the checks, but the bank at no time attempted to charge his account with these checks or any of them. The answer of the defendant is a denial in a detailed statement of facts, concluding in general with the claim of a full payment of the drafts by delivering the checks to the collecting bank as agent of the plaintiff and alleging the acceptance of such checks by such agent. The cause was submitted to the court on the statements of facts contained in the petition, answer and reply and a short stipulation concerning the financial affairs of the bank during the time these transactions took place. Judgment was rendered for the plaintiff for the full amount of the drafts for these three carloads of corn, from which judgment the defendant appeals.

The appellant urges strongly two points: First, that the collecting bank was at all times in each of the three transactions the agent of the plaintiff, and that plaintiff is bound by its acts in receiving the checks on itself as payment; and, second, that there was an actual acceptance of such checks as full payment.

On December 3 the first of these transactions took place at the bank, when a draft for $978.21 was received with bill of lading attached. The defendant had a balance to his credit in that bank that day of $5,238.79. The bank had cash on hand that day to the amount of $916.40, and a credit at Kansas City of $1,183.01, or a total of $2,099.41, and had outstanding cashier's checks and drafts amounting to $3,210.70.

The next transaction took place December 4. The draft was for $925.58. Defendant's bank balance was $4,496.56. Cash on hand in the bank was $876.62, and credit at Kansas City $847.30, or total of $1,723.92, with outstanding cashier's checks and drafts at that time of $3,210.70.

The third transaction took place December 6. The draft was for $785.96, when defendant's balance was $4,194.39. The cash in the bank was $929, and in Kansas City $814.24, total $1,743.24, with outstanding cashier's checks and drafts of $4,580.89.

The record shows the plaintiff was holding one of these outstanding checks in the sum of $637.81 for a carload sent a few days earlier than these. The bank officers did not charge any of these three checks given by the defendant to his account nor attempt to transmit by draft or otherwise to the plaintiff, but when the bank closed on December 10 these three checks of defendant were on the counter, and defendant's deposit account was not reduced thereby.

It will be seen from the above figures that the bank was unable at any time to cash these checks when they came in or pay any of them out of the cash on hand and the credit it had at Kansas City. It is hinted that the last one could have been paid out of the cash on hand, but there were on the counter the two earlier checks not cashed, and it would be unreasonable to cash the last when two earlier ones remained unpaid. In this connection it should be stated that the defendant acted in good faith and had no reason to think he was not paying these drafts out of his deposit as he had regularly been doing. There is no dispute about the collecting bank being the agent for the plaintiff for the purpose of collecting and remitting, but appellee insists that such agency ceases when the agent departs from the instructions given. The distinction can be readily seen in the reference cited by plaintiff to the attempted collection and payment of a car which arrived just a few days earlier. Defendant's check was received by the bank,

his account charged with the amount, and a draft sent to the plaintiff. The agent got his money from the defendant's account and attempted to remit it, but the bank closed its doors before the draft was paid. In that case the plaintiff can only look to the bank to make good its drafts. In the cases involved in this action the bank did just the same thing as in the former case in receiving from the defendant his check in payment of the draft it delivered to him. But the check was worthless, not because of any fault of the defendant, but because the defendant's money was not available. It was not there nor at the correspondent bank in Kansas City. It had been used for other purposes. A check is an order or request to pay another from one's deposit. The bank could not comply. The bank took or received the order but did not comply. In this it was acting for the defendant, one of its depositors, and failed to carry out his directions. There is such a situation as an agent changing from one principal to another, and sometimes an agent may be acting for both parties at the same time. It has been held that the relation of bankers in the transactions of collecting and remitting frequently changes from that of principal and agent to that of creditor and debtor. (*Colorado & S. Rly. Co. v. Docking,* 124 Kan. 48, 257 Pac. 743.)

It is strongly urged that the act of the insolvent bank amounted to an acceptance of the check as payment, and the intention of the parties was to make a payment. The intention of the defendant was most certainly to make payment, but the bank and its officers could not possibly have so intended. They may have hoped that something might happen in the near future to make payment possible, but when they took the check it was an absolute impossibility.

Cases cited showing that the neglect or failure to make the bookkeeping entries and charge the items to the account of the depositor does not prevent the act of the bank from being a complete acceptance of the checks, or even of a verbal order, to pay a creditor. On the question of acceptance of checks as payment so as to bind the creditor and relieve the debtor, many cases are cited by appellant, but on examination of them it is found that not only did the depositor have the money to his credit but the bank at that time was solvent and able to pay the check—entirely different from the fact in this case. In this list are the following: *Baldwin's Bank v. Smith,* 215 N. Y. 76; *Nineteenth Ward B'k v. So. Weymouth B'k,* 184 Mass. 49; *State Nat. Bank v. First Nat. Bank,* 124 Ark. 531;

*Trust Co. v. Owosso Savings Bank,* 223 Mich. 513; *The British &
American Mortgage Co. v. Tibballs et al.,* 63 Ia. 468; *Alpena Nat.
Bank v. Greenbaum,* 74 Mich. 157.

Along this same line, with this same distinction, the two cases
against the Hanover State Bank (*Tire & Rubber Co. v. Bank,* 109
Kan. 772, 204 Pac. 992; *Kesl v. Bank,* 109 Kan. 776, 204 Pac. 994)
expressly show in the syllabus of each that not only was the money
on deposit but the bank had it and was able to pay it. In both
these Kansas cases, and some of those cited from other states, the
actions were against the bank for a preference and were not at-
tempts to collect from the original debtor.

Some of the cases cited by appellant refer to the almost universal
custom of paying debts by checks and the futility of withdrawing
the currency from the bank by check and then passing it back in
payment of the debt. But an agent does not bind his principal when
he exceeds his specific authority. A check is only a conditional pay-
ment, and a debtor does not effect a payment by tendering a worth-
less check unless one authorized to act for the principal to that ex-
tent accepts it as payment.

"With the exception of a few jurisdictions the authorities are unanimous
in supporting the rule that the giving of a bank check by a debtor for the
amount of his indebtedness to the payee is not, in the absence of an express
or implied agreement to that effect, a payment or discharge of the debt, the
presumption being that the check is accepted on condition that it shall be
paid." (21 R. C. L. 60.)

"A check of itself does not operate as an assignment of any part of the funds
to the credit of the drawer with the bank, and the bank is not liable to the
holder, unless and until it accepts or certifies the check." (R. S. 52-1706.)

"Unless a special authority to do otherwise is shown, a bank having paper
for collection cannot receive in payment therefor anything but money, or
that which by common consent is considered and treated as money." (7 C. J.
614.)

"A mere deposit with a bank of the amount necessary to meet paper sent
to the bank for collection is not of itself a payment; but where funds of the
debtor on deposit in the bank are applied to payment of his paper, the payment
is complete." (7 C. J. 615.)

The language of Justice Brewer on this subject is found in *Mordis
v. Kennedy,* 23 Kan. 408, 409:

"It is settled that the mere taking of a bank check is not a payment of
the debt (*Kermeyer v. Newby,* 14 Kan. 164), and if the check be not paid, the
party may return it, and sue on the original debt."

The difficulty, or rather the confusion, in this case is in the fact that the checks were drawn on the collecting bank when that bank was insolvent and unable to pay them. Had they been drawn on another bank that was insolvent the acceptance of the checks by the collecting bank would be nothing more than conditional upon their being paid. But here, because the bank officer knew they were worthless and said nothing but delivered over the bills of lading contrary to instructions, it is contended that he thereby accepted them as full payment, binding his principal and relieving the debtor. Such a conclusion is contrary to the line of authorities above cited on general principles.

"The counsel for both parties recognize the Milford bank as plaintiff's agent for the collection of the draft. It is elementary doctrine that 'An agent authorized merely to collect a demand, or to receive payment of a debt, cannot bind his principal by any arrangement short of an actual collection and receipt of the money.' . . .

"The most that can be claimed for this transaction is that the defendant, by accepting and delivering the demand draft, directed the Milford bank to pay the same and charge the amount to his account, and that the bank promised to do so. As between them, it was, perhaps, understood that defendant had paid this draft, but it was in law no more than an attempted substitution of the bank for himself as debtor. Had the acceptance been a check, and the check drawn upon another bank or private person, the effect would have been in law the same. The law requires payment in money, and, as already shown, nothing else answers the purpose, except by agreement with the creditor, or his agent duly authorized to accept something else. As between defendant and his bank, it was clearly the latter's duty to honor his check (for acceptance, which, under their custom, was practically a check) by payment of the draft, but the creditor was no party to that transaction. The bank was plaintiff's agent to collect the money, not to make an arrangement by which it should assume the debt. A debtor who seeks to pay a debt through his debtor, thereby securing his own claim, acts at his peril, and is not exonerated from his obligation until his debtor performs his part by satisfying the creditor." (*State Bank v. Byrne,* 97 Mich. 178, 179, 180.)

In the case at bar the defendant did not part with anything of value. When the receiver took charge of the bank his account was not diminished by any of these checks. The checks were still lying on the counter.

"At the time defendants gave their check, it was worthless, because of the insolvency of the Bridger bank. It could not be paid, and by giving it defendants did not part with anything of value or alter their situation to their prejudice. Giving a worthless check does not pay a debt." (*U. S. Nat. Bank of Red Lodge v. Shupak,* 54 Mont. 542, 548.)

"Where the owner of city warrants forwards them to a local bank for collection, which delivers them to said city and accepts the city's check therefor drawn on and made payable to said bank, and where said bank is in a failing condition, and only remains open for business during the remainder of that day and the following day, when it suspends business, and where said bank at no time after receiving said check has sufficient funds to pay the same, and where the owner of said warrants later brings suit thereon against the city, and the only defense pleaded and relied upon is that of payment, *held*, such defense is not thereby established, and the plaintiff is entitled to recover the full amount sued for." (*City of Sulphur v. Farmers' Nat. Bank*, 101 Okla: 148, cyl.)

"A draft which, on its face, requires payment to be made in cash or its equivalent only, and likewise limits the authority of the collecting bank to collecting and remitting to the drawer, is not paid by the act of the collecting bank in receiving the check of the drawee on the collecting bank for the full amount of the draft, and surrendering the latter, when such check, without any fault on the part of the maker, *turns out to be worthless*." (*Sanitary Can Co. v. National P. & C. Co.*, 191 Ia. 1259, syl.)

"The tender to a bank to which a draft with bill of lading attached has been sent for collection, of a check on itself, does not amount to payment, although the maker of the check had sufficient funds on deposit to meet the check, and the check is marked 'Paid,' if the draft requires payment in cash or its equivalent, and the bank is insolvent, so that the check is never paid." (18 A. L. R. 532. See, also, note on p. 537.)

We conclude that when the collecting bank received anything but money or its equivalent in payment of the bills of lading it exceeded its authority and did not thereby bind its principal, and that it was not an acceptance of payment either to bind the principal or relieve the debtor from the obligation to the creditor, which obligation he has never paid in any way or manner.

The judgment is affirmed.

HARVEY, J., dissenting.