No. 28,786.

NELLIE GRIFFITH, *Appellee*, v. THE BURLINGTON STATE BANK et al.,
*Appellants.*

(277 Pac. 42.)

Opinion
filed May 4, 1929.

*L. H. Hannen,* of Burlington, and *Elmer W. Columbia,* of Oswego, for the appellants.

*Ray S. Pierson,* of Burlington, *Roscoe W. Graves,* of Emporia, and *H. G. Leedy,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to establish a preferred claim against the receiver of the Burlington State Bank. Plaintiff recovered, and the receiver appeals. The case is companion to that of *Peoples State Bank v. Burlington State Bank* (ante, p. 274, 277 Pac. 39).

The administrator of an estate kept his funds in the Burlington State Bank, of Burlington, Kan. Desiring to make partial distribution of the estate, the administrator mailed to Nellie Griffith, one of the heirs residing at Riverside, Cal., his check on the bank for $2,000. Nellie Griffith delivered the check to the First National Bank of Riverside, which forwarded it directly to Burlington State. A form letter was used in transmitting the check, which read:

"We inclose the following items for collection and $\left\{\begin{array}{l}\text{Return}\\\text{Credit.}\end{array}\right.$"

Riverside National had no account with Burlington State, was

not opening an account with Burlington State, was not given credit by Burlington State, and the letter was properly understood and treated as if it read "for collection and returns."

Burlington State charged the check to the administrator's account, and sent Riverside National a draft on Burlington State's Kansas City, Mo., correspondent, the Commercial National Bank. The draft was dated April 6, 1927. At close of business that day Burlington State suspended. When the draft was presented to Commercial National, payment was refused. When the administrator's check was drawn and paid, his account was more than sufficient to take care of the check. When the draft on Commercial National was drawn and forwarded to Riverside National, Burlington State's account with Commercial National was more than sufficient to take care of the draft. When Burlington State closed, it had cash on hand in the sum of $3,918.42. The financial relations between Burlington State and Commercial National are stated more at length in the opinion in the Peoples State Bank case.

When a check on a bank is sent to the bank for collection it acts as agent of the sender to make the collection, and when the collection is made it gets the proceeds in the same capacity as if the collection were made from another bank across the street. In this instance the bank made the collection by charging the check to the account of the administrator. The check was authority from the administrator to make the charge, and his funds subject to check were reduced by the amount of the check. Having made the collection, the bank's relation to the fund was the same as if the collection had been made from a bank across the street, and the principles apply which governed the decision in the Peoples State Bank case. The precise question was determined in the case of *Kesl v. Bank,* 109 Kan. 776, 204 Pac. 994 (1921).

In the opinion in the case of *Guymon-Petro Mercantile Co. v. Farmers State Bank,* 120 Kan. 233, 243 Pac. 321, the Kesl case was distinguished and there was no analogy between the two cases. In the Guymon-Petro case, the sole obligation of the failed bank was to pay its depositors' checks. It was not agent of anybody to do anything. The relation to the drawer of each check was that between debtor and creditor, and the fact that its checks came to it for payment from a chain of collecting agencies did not change that relation. All that happened was, the obligation of the debtor to its creditors was not discharged. Delivery of a worthless draft by way

of discharge did not convert funds of the bank on which unpaid checks and unpaid draft were drawn into trust funds. In the Kesl case, and in the case under decision, the banks on which the checks were drawn obtained possession of the checks under conditions which created a fiduciary relation.

In the opinion in the Guymon-Petro case the technical, even artificial, character of the principal-agent-trust-fund doctrine was adverted to. The observation contains a possible implication which if carried to its logical conclusion would upset the doctrine. To illustrate: In the Peoples State Bank case Commerce Trust sent a draft on Burlington National to Burlington State for collection and remittance. The possible implication referred to is that whatever Burlington State might do in the collection transaction would be done by Commerce Trust, and consequently Commerce Trust could not hold Burlington State for violation of its instruction to collect— which meant to collect money or its full equivalent, and its instruction to remit—which meant to remit money or its full equivalent. That would permit an agent for collection and remittance to convert, by its own act, its fiduciary relation to that of debtor and creditor— something which an agent to collect and remit has no power, express, apparent, or implied, to do.

The principal-and-agent doctrine was accepted by all the members of the court in the Kesl case and in the companion case of *Tire & Rubber Co. v. Bank,* 109 Kan. 772, 204 Pac. 992. The dissent in each case was on the ground no change in the assets of the failed bank occurred. The subject of principal and agent was not discussed in the opinion in the Tire & Rubber Company case, because there was no dispute about it. The matter of augmentation of assets, concerning which the members of the court did not agree, was not material unless the failed bank were a trustee of the fund acquired in execution of its agency to collect. The judgment was that preference be allowed, which required existence of three necessary elements enumerated in the brief of counsel for the prevailing party as follows:

"First. There must be a showing that a fiduciary relationship existed between the claimant and the bank, such as that of principal and agent.

"Second. There must be a showing that the transaction resulted in an increase in the funds of, or a swelling of the assets of the bank.

"Third. There must be a showing that the increased assets were not dissipated by the bank, but remained in its general assets and passed into the

hands of the receiver at the time of his appointment." (*Tire & Rubber Co. v. Bank,* No. 23,810, Briefs 109 Kan.)

In this instance Riverside National manifested no intention that Burlington State should become its debtor. Riverside National did manifest intention that Burlington State should become its agent, and the fiduciary relation constituted Riverside National's security. (*Holder v. Western German Bank,* 136 Fed. 90, 92.) If a bank were to be permitted to change at will the relation of agent to that of debtor, forwarding banks would be compelled to require shipment of currency in order to protect themselves. The effect upon the transaction of business would be so disastrous that the evil consequences would far outweigh the hardship to depositors resulting from application of the principal-and-agent doctrine to occasional bank failures.

Following the decisions in the Tire & Rubber Company and Kesl cases, it must be held that the funds of Burlington State which came into the hands of the receiver were augmented to the amount of the Griffith check. When the Griffith check was collected, Burlington State held the proceeds precisely as it held the proceeds of the collected draft in the Peoples State Bank case. The proceeds taken out of the account of the administrator did not belong to Burlington State or form part of its assets available for distribution among creditors. The receiver, however, got the benefit of them.

The receiver contends that if a preferred claim be allowed, he should account to the extent of the cash in the bank's vault when it failed, and no further. While Burlington State was a going concern it designated the fund out of which its obligation to Riverside National should be discharged. It wrote and mailed its draft on Commercial National.

In the case of *Clark v. Bank,* 72 Kan. 1, 82 Pac. 582, the syllabus reads:

"Ordinarily the issuance of a bank draft does not, prior to its acceptance, operate as an assignment of a part of the fund against which it is drawn." (¶ 1.)

As applied to the case under decision, this means that the right of Burlington State to funds on deposit in Commercial National to the amount of the draft sent to Riverside National was not effectively transferred to Riverside National so that Riverside National could enforce the right against Commercial National. The draft, however, did manifest intention of Burlington State that funds

in possession of Commercial National to the amount of the draft should be used to pay the draft. A portion of a specific fund was thus in effect segregated and appropriated to discharge the trust resulting from collection of the Griffith item. As in the Peoples State Bank case, that fund was traced to possession of the receiver. The receiver's estate was enriched to the amount of the Griffith check, and plaintiff has a preferred claim on the estate for the amount of the check.

In the Tire & Rubber Company and Kesl cases, Justice Mason's objection to the holding that the receiver's estate was bettered was that fiction was substituted for fact. In the dissenting opinion in the Tire & Rubber Company case it was said:

"The theory of an increase in assets can be given effect only by changing the transaction—by regarding an arrangement for the transfer from one person to another of money the bank was already holding as the bringing of new money to it. . . ." (*Tire & Rubber Co. v. Bank,* 109 Kan. 772, 775, 204 Pac. 992.)

The writer agreed with Justice Mason. Perhaps this view was too realistic. The view was confined strictly to the *corpus* of the estate as a physical thing, and did not sufficiently regard distinct legal relations of the thing. However that may be, the writer regards the subject as *stare decisis,* and does not contend further.

Carefully considered decisions of other courts are in accord with the decisions of this court, but it is not necessary to cite them.

The judgment of the district court is affirmed.

HARVEY and HUTCHISON, JJ., dissenting.