No. 31,459

In the Matter of the Liquidation of THE PEOPLES STATE BANK, MORAN (MARTIN COMMISSION COMPANY, *Appellee,* v. PEOPLES STATE BANK, MORAN, and CHARLES W. JOHNSON, General Receiver, *Appellants*).

(31 P. 2d 18.)

Opinion filed April 7, 1934.

*Wallace H. Anderson* and *G. M. Lamer,* both of Iola, for the appellants.
*Frederick G. Apt* and *A. R. Enfield,* both of Iola, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to establish a preferred claim against a failed state bank.

The plaintiff, hereafter referred to as the commission company, drew its draft for $766.07 against the Cox-Lam Grain & Supply Company of Moran, and caused it, with bill of lading for a car of corn attached, to be sent to the Peoples State Bank, Moran, Kan., for collection and remittance. On December 23, 1930, the collection was received by the Moran bank, and on the same day the Cox-Lam company drew its check to the order of the collecting bank for $766.07 and delivered it to the bank and received the bill of lading. The Moran bank continued open for business until the night of December 24, 1930. On December 26 it was taken in charge by the bank commissioner. After receiving the Cox-Lam company check, the bank did nothing further with the check, nor did it remit to the commission company the proceeds from the draft on the Cox-Lam company.

The commission company filed its application and petition alleging the drawing of the draft, the sending of the same to the Moran bank, the giving of the check by the Cox-Lam company to the bank and the delivery by the bank to the Cox-Lam company of the bill of lading and the failure of the Moran bank to remit the proceeds to the commission company; that the Moran bank is indebted to the commission company for $766.07 and was so indebted when it was closed by the bank commissioner; that no part of the collection had been remitted; that the bank is not entitled to any set-offs or counterclaims; that it has not assigned or transferred said account, and that the entire amount is due.

"That the proceeds of such collection became and are impressed with a trust in favor of the Martin Commission Company and that such claim is entitled to preference and priority."

It is further alleged that it had filed its claim in due time, and prayed that it be allowed a preferred and prior claim of $766.07 against the Moran bank. It is here noted that it is not alleged that the assets of the bank were augmented by the transaction, or that the proceeds thereof ever reached the receiver.

At the trial the only witness was an assistant receiver of the bank, who had been its vice president prior to the bank commissioner's taking charge. He knew nothing personally about the

transaction, and his testimony was entirely from records. The court made findings of fact with respect to the transaction as are summarized above and also found the following:

"6. That the said Cox-Lam Grain & Supply Company had on deposit, subject to check, on the 23d day of December, 1930, as shown by the records introduced in the trial of the case, the sum of $4,509.30.

"7. The court finds that the collection above mentioned was made on the date named, but that said collecting bank, upon receipt of the check of $766.07, did not remit on that date, or on the 24th day of December, 1930, to the Fidelity National Bank & Trust Company, the proceeds realized from said collection, and further did not, as disclosed from the evidence, on that date, or on December 24, 1930, charge the account of the Cox-Lam Grain & Supply Company with the $766.07."

"9. The court further finds that. the Peoples State Bank permitted the check drawn by the Cox-Lam Grain & Supply Company, in the sum of $766.07, payable to the order of the Peoples State Bank, to remain in said bank from the date the collection was made to and including the 24th day of December, 1930; that the next day following, being Christmas, the bank was closed because of the holidays, and on the morning of December 26, 1930, the state bank commissioner, through its authorized representative, closed said bank and took charge of the same."

With respect to whether the bank could have cashed the Cox-Lam company check or could have remitted to the commission company the augmentation of assets and the amount of assets passing into the hands of the receiver, the court made no findings other than in Nos. 13 and 14, which are as follows:

"13. The court finds that on the day the collection was made by the Peoples State Bank, and the day following, to wit: December 24th, the said bank was open, doing business, and carrying on a general banking business.

"14. The court further finds from the evidence introduced, that the Peoples State Bank, on December 26, 1930, the date of the examination made by the examiner, . . . had on hand in cash, $533.72. That in addition thereto, there were several cash items amounting to $288.74, making a total of $822.46."

The court further found that the relation existing between the commission company and the Moran bank was that of principal and agent, and concluded and ordered that the commission company should recover against the defendant as a preferred creditor.

Although no finding of fact was made with reference thereto, there was evidence that within a day prior to or on the day the commission company's draft was received, six other sight drafts against Cox-Lam company, totaling $3,697.88, were also received, and that Cox-Lam's checks for all of the sight drafts, totaling

$4,463.95, were given in payment; that the commission company's check was either the last or next to the last one received, and that none of those checks had been entered on the bank's books and charged against the Cox-Lam company account when the receiver took charge of the bank.

Defendant's motions to set aside finding of fact No. 14 and certain conclusions of law, for additional findings and for a new trial, were denied, and it appeals.

The trial court in deciding the issue rendered a written opinion, which is incorporated in the abstract, and which shows its reliance upon the decisions in the Hanover State Bank cases hereafter referred to, and appellee in its brief relies largely upon the same cases to support the trial court's conclusions.

In *Tire & Rubber Co. v. Bank,* 109 Kan. 772, 204 Pac. 992, 21 A. L. R. 677, the test of whether the plaintiff is entitled to a preferred claim is stated:

"In order for plaintiff to have a preferred claim upon the estate in the hands of the receiver it must appear that the proceeds of the check in some form reached his hands, and that the assets brought under his control were larger by that amount than they would otherwise have been. While there has been much difference of judicial opinion on the subject, some of which still remains, that is now the generally accepted view." (Citing cases.) (p. 773.)

This test was approved in *Kesl v. Bank,* 109 Kan. 776, 204 Pac. 994; *Secrest v. Ladd, Receiver,* 112 Kan. 23, 209 Pac. 824; *Nelson v. Paxton, Receiver,* 113 Kan. 394, 214 Pac. 784; *State Bank v. State Bank,* 114 Kan. 463, 468, 218 Pac. 1000; *Baker-Evans Grain Co. v. Ricord,* 126 Kan. 107, 267 Pac. 14; *Matzen v. Johnson,* 127 Kan. 139, 272 Pac. 164; *Griffith v. Burlington State Bank,* 128 Kan. 279, 277 Pac. 42; *Schoen v. Johnson,* 134 Kan. 612, 7 P. 2d 117, and perhaps other cases, in some of which recovery was allowed, in others not, depending on the facts of each case.

In the case at bar it may be conceded that, assuming the Cox-Lam company check was good and the Moran bank on which it was drawn had funds with which to pay it, and the amount thereof was not remitted to the drawer of the sight draft but remained with the bank and passed into the hands of the receiver, the plaintiff, drawer of the draft, would have been entitled to a preferred claim.

In *Baker-Evans Grain Co. v. Ricord,* supra, it was held:

"The delivery to a bank of a check on itself, to which bank a draft with bill of lading attached is sent for collection and remittance, does not amount

to a payment, although the maker of the check has sufficient funds on deposit with such bank to meet it, if the bank is insolvent and the check is not paid." (Syl. ¶ 3.)

And in *Schoen v. Johnson,* supra, in discussing the question of a "trust fund," it was said:

"Appellant argues that the transaction was the same as though plaintiff had given his check to the bank, asked for the money on it, and after it was given to him, handed it back to the cashier with instructions to send that particular money to the Central Trust Company, and in support of that view cites *Tire & Rubber Co. v. Bank,* 109 Kan. 772, 204 Pac. 992. The situation is not the same. There the bank had the money with which the check in question could have been paid, and the theoretical transaction actually could have taken place. Here the bank did not have the money to pay a check of $3,675, or any substantial part of it. It had only a few hundred dollars on hand. The theoretical transaction actually could not have taken place." (p. 614.)

What is the situation here? When Cox-Lam company gave the bank its check, it had on deposit to its credit in the bank a sum sufficient to pay that check as well as the six other checks, at least five of which were presented to the bank prior to the presentation of the particular check in question, and, from the evidence, none of which were paid. The trial court made no finding that the bank was in funds to pay these checks, but merely found that the bank was open and doing business. Because it was entirely possible that the bank could continue open until some large check was presented for payment, and because the abstract failed to show the condition of the bank either on December 23 or 24, we sent for the transcript of evidence. As indicated heretofore, only one witness testified and he stated that he knew nothing personally about the instant transaction. He testified that on December 23 and 24 the bank was paying checks in cash in the usual course of business and had sufficient funds to pay all checks on the 23d, and that when the bank closed on the 24th it had cash of $533.72 and cash items the amount of which is not clearly shown, but the total of cash and cash items was shown to be $822.46. It is not made to appear in any way what the amount of cash was on December 23, nor what would have been the situation if the Cox-Lam company checks in payment of drafts had been paid in the order in which they were presented. So far as the record goes, there is a failure to prove even that the check in the instant case could have been paid in cash, if cash had been demanded, or by draft on a correspondent bank, if payment in that manner had been demanded, even though the prior checks be ignored. The fact that the bank

accepted the Cox-Lam company check and delivered to that company the bill of lading is no evidence that the check was good—not because the company didn't have a sufficient deposit, but because of an entire lack of evidence of the bank's ability to pay the check. The fact that this check, as well as at least five other checks of the same company, were not charged to the company's account, considered in connection with the testimony as to the amount of cash and cash items on hand at the close of business on December 24, is rather persuasive evidence that the bank was not able to pay the checks, and the check in the instant case in particular, when the same were accepted by it. The burden of proof was not on the receiver to prove that the check was not good, it was on the claimant to prove that it was good, and notwithstanding the court's finding No. 13, that burden was not sustained. (See *Baker-Evans Grain Co. v. Ricord*, and *Schoen v. Johnson,* supra, and, also, *Investment Co. v. Bank*, 98 Kan. 412, 415, 158 Pac. 68, and cases cited above.)

If it be assumed that the check was good, there is another reason why the plaintiff is not entitled to a preference. It failed to prove and the court did not find that the assets reaching the receiver were augmented in any amount whatever, or, if so augmented, that the increase passed to the receiver. It has been found that the cash on hand was less than the check, but there is no finding or evidence whatever as to the cash item, whether there were offsetting items, or what amount, if any, ultimately reached the receiver. So far as the record shows, the assets turned over to the receiver were on hand before any of the Cox-Lam company checks were received by the bank. During the course of the trial the court refused to permit the defendant to show there was no augmentation of assets, stating that was a conclusion to be made by the court from the evidence. Very well. When the court made its findings and failed to find there was augmentation of assets and that the same reached the receiver, it must be held it found to the contrary. (See *Snodgrass v. Carlson*, 117 Kan. 353, 232 Pac. 241, and *State, ex rel., v. Riverside Drainage District*, 123 Kan. 46, syl. ¶ 5, 254 Pac. 366.)

The proof shows that the plaintiff is entitled to a common claim against the defendant bank, but fails to show that it is entitled to a preferred claim, and the judgment of the lower court allowing the preference is erroneous.

The judgment of the lower court is reversed, and the cause remanded with instructions to allow the claim as a common claim.