No. 23,894.

CHARLES SECREST, *Appellee and Appellant,* v. FRANK ORGAN (MARTIN LADD, Substituted) as Receiver of THE PEOPLES STATE BANK OF COFFEYVILLE, *Appellant and Appellee.*

SYLLABUS BY THE COURT.

1. TRUST FUND—*Special Deposit in Bank for Specific Purpose—Misappropriated by Bank—Deposit May Be Followed and Reclaimed by Owner.* Where a special deposit is placed in a bank to be used only in payment of certain shares of capital stock of the bank when the same should be duly authorized and issued, which stock was not authorized nor issued, but the bank misappropriated the money so deposited and used the same in its general business thereby augmenting its assets, and where shortly afterwards the bank became insolvent and its assets passed into the hands of a receiver, the special deposit constitutes a trust fund which the beneficial owner was entitled to follow and reclaim from the augmented assets in the hands of the receiver in preference to the claims of general creditors.

2. SAME. The fact that a part of the money was drawn from the bank and placed in this special fund for the specified purpose did not deprive that amount of its trust character nor prevent the recovery of it as a trust fund.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed October 7, 1922. Modified.

*W. E. Ziegler,* and *A. M. Etchen,* both of Coffeyville, for the appellant and appellee.

*Walter S. Keith,* and *Harold C. McGugin,* both of Coffeyville, for the appellee and appellant.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Peoples State Bank of Coffeyville was found to be insolvent about January 20, 1921, and a receiver was appointed to close up its business. About sixty days before insolvency the president of the bank induced Charles Secrest to subscribe for thirty-one shares of a contemplated increase in the capital stock of the bank and to deposit $3,875 in the bank, which it was agreed should be used only in payment of the subscribed shares of stock when the same were authorized and issued to Secrest. The increase of capital stock had not been authorized nor had any stock been issued to Secrest when the bank became insolvent. When it was closed its liabilities amounted approximately to $600,000, and the available assets remaining were approximately $200,000. As against these assets there were special deposits or claims upon which

preferences have been demanded, which amount to approximately $90,000. The special deposit was made by the transfer of certificates of deposit on other banks to the amount of $2,806.53 and by a check or receipt transferring to the Peoples State Bank a savings deposit of $1,068.47 which Secrest had in that bank. The trial court gave judgment for Secrest for the whole amount of $3,875, adjudging that $2,806.53 of the special deposit was a trust fund which should be paid in full, but that the $1,068.47 transferred from Secrest's savings account was a common claim which was not entitled to priority. The receiver appeals from that part of the judgment making $2,806.53 of the deposit a preferred claim and Secrest appeals from that part denying priority as to the $1,068.47 transferred from the savings account.

Was the special deposit made by the plaintiff in the bank a trust fund, and if it has the trust character can it be followed and payment required out of the assets of the bank in preference and before distribution to general creditors? There can be no doubt of the fiduciary relation between the plaintiff and the bank. The fund was placed in the bank to be applied to a specified purpose for the benefit of plaintiff. It was not to go into a general account and had none of the characteristics of a general deposit. It was intrusted to the bank to be applied in payment of the shares of capital stock when the same was authorized and issued. The increase of stock was never authorized and no shares were issued or delivered to plaintiff before the failure of the bank. It is agreed that the fund was to be for no other than the specified purpose. The beneficial ownership of the fund remained in the plaintiff and the misapplication of it by the bank did not change its trust character. Can it be identified or traced to the assets of the insolvent bank which came into the possession of the receiver? He holds it by no better title than did the trustee, and he took the assets of the insolvent bank subject to any trust impressed upon them. Instead of holding the fund for the specified purpose and application, the bank converted and mingled it with its general funds, using it to honor checks, make loans, and as a part of its cash and sight exchange. The special deposit was made about two months before the bank was closed for insolvency and possession of its assets was taken by the bank commissioner. If the trust fund can be identified it may be followed through every mutation and subjected to the trust. The fact that it was mingled with the general deposits and used in the general busi-

ness of the bank did not take away its trust character nor prevent the owner from reclaiming it if it can be traced into existing assets in the hands of the receiver. In the early case of *Peak v. Ellicott,* 30 Kan. 156, 1 Pac. 499, it was held that a trust fund placed in a bank which subsequently failed might be followed into the custody of the assignee and reclaimed out of the assigned estate. It was said:

"If a trust fund is mixed with other funds, the person equitably entitled thereto may follow it, and has a charge on the whole fund for the amount due." (p. 161.)

The theory was that as the fund never belonged to the bank, creditors were not injured if it was turned over by the assignee to its owner. Other cases of like import are:

*Myers v. Board of Education,* 51 Kan. 87, 32 Pac. 658; *Hubbard v. Irrigating Co.,* 53 Kan. 637, 36 Pac. 1053, 37 Pac. 625; *City of Larned v. Jordan,* 55 Kan. 124, 39 Pac. 1030; *Bank v. Bank,* 62 Kan. 788, 64 Pac. 634; *Reeves v. Pierce,* 64 Kan. 502, 67 Pac. 1108; *Clingman v. Hill,* 104 Kan. 145, 178 Pac. 243.

As was held in *Investment Co. v. Bank,* 98 Kan. 412, 158 Pac. 68, the fact that the fund was fraudulently misappropriated by the bank does not of itself give an equitable right to reclaim it as against general creditors, but it was there said:

"If the money misappropriated reaches the hands of the custodian who administers the estate, in its original form or in any other—that is, if the assets in his hands are thereby increased by the amount fraudulently obtained—the fund can be restored to the lawful owner and no one will be any worse off than if the transaction never had occurred." (p. 416.)

The fund is subject to identification and to be reclaimed if it can be traced into the existing assets which reached the hands of the receiver. As said in *Bank v. Bank,* supra:

"If the trust fund has been mingled with other assets of the trustee, and it appears that such assets have been thereby appreciably augmented and bettered, a trust will be impressed on such assets, and the *cestui que trust* will be entitled to have the trust fund reclaimed and taken out of the assets with which it is mingled." (Syl. ¶ 2.)

Here the funds were augmented and bettered to the extent of the amount of the fund misappropriated and used in the business of the bank. The assets which came into the hands of the receiver greatly exceeded the amount of the trust fund in question, and in fact of all the trust funds claimed. The right to follow and retake the proceeds of trust property ceases only when assets into which the fund

has come have been expended so that no part of them can be traced to existing assets.

No reason is seen for disallowing a preference for the amount drawn out of the savings account by plaintiff and turned over to the bank as part of the special deposit. It was as effectually impressed with the trust as if plaintiff had drawn the cash from the bank and placed it with other moneys in the fund to be used for the specified purpose. (*Tire & Rubber Co. v. Bank*, 109 Kan. 772, 204 Pac. 992.)

The judgment is therefore modified with the direction that the entire amount, $3,875, be allowed and adjudged to be a preferred claim to be paid in full out of the assets in the hands of the receiver.