No. 24,741.

S. A. NELSON, *Appellee*, v. W. A. PAXTON, as Receiver of the FARMERS STATE BANK of SPRING HILL, *Appellant*.

SYLLABUS BY THE COURT.

TRUST FUNDS—*Misappropriation of Government Bonds—Proceeds Must Have Augmented Assets of Bank Passing to Receiver.* In a suit by the owner of government bonds, left with a bank for safe-keeping and which were misappropriated by the bank or some of its officials, against the receiver of the bank, the plaintiff is not entitled to judgment decreeing the amount due him to be a trust fund and a lien upon the assets unless it is shown that the proceeds of the bonds were in some form a part of the assets which came into the hands of the receiver.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed April 7, 1923. Affirmed in part and reversed in part.

*Alpheus Lane*, of Paola, for the appellant.

*H. L. Burgess, J. W. Parker*, and *G. A. Roberds*, all of Olathe, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a suit by the owner of government bonds, left with a bank for safe-keeping and wrongfully converted by the bank, against the receiver of the bank, for their value, and that the proceeds be held to be a trust fund and a first lien upon the assets in the hands of the receiver. There was a trial to the court and judgment for plaintiff as prayed for. The defendant appealed and concedes that the claim should have been allowed as a general claim against the receiver, but contends there was not evidence to support that part of the judgment decreeing the amount to be a trust fund and a first lien upon the assets in the hands of the receiver.

The Farmers State Bank of Spring Hill was managed for about ten years almost entirely by its cashier, Irwin Williams, who appears to have had the confidence of the people of the community. The plaintiff and many others bought government bonds and left them with the bank for safe-keeping at the invitation or request of the cashier. In August, 1921, an investigation was made, and it was found that the bonds were not at the bank, except a few; and that many of them had been sold at Kansas City and the proceeds used, and that the affairs of the bank were in bad shape. A receiver was appointed and further investigations made. The plaintiff brought this suit: other persons in similar situations brought similar suits. This suit was tried in hope that it would settle the questions in controversy as to this and other similar actions. We examine the record only as it pertains to the bonds sued for.

In April, 1918, plaintiff purchased from the bank three bonds, two of the denomination of $500 and one of $100, and in September, 1918, he purchased another $100 bond. Receipts of the bank, signed by its cashier, were given plaintiff for the bonds, showing their denomination and number; and the bonds were left at the bank for safe-keeping. A record was made upon a book kept by the bank for that purpose, showing that the bonds belonged to plaintiff. Interest was collected on the bonds as it became due up until April 1921, or at least was so noted on the record and credited to plaintiff on his account at the bank.

When the receiver took charge of the bank, in August, 1921, the records showed customers' bonds to the amount of about $50,000 that were missing. The books also showed $1,950 customers' bonds that were on hand. Of these, two $50 bonds were identified and delivered to their owners, the balance, $1,850, was not identified.

The evidence shows that customers' bonds and also bonds belonging to the bank were sold from time to time in lots of $10,000 to $15,000 at Kansas City banks and credit there given the Farmers State Bank, at Spring Hill, and the amounts of such credit were drawn out from time to time by the Farmers State Bank or by Williams, its cashier. The proceeds from one of these bond sales appear to have been placed first in the Farmers State Bank at Spring Hill and then transferred to the Miami County National Bank at Paola. There is not a very clear showing as to how this money was used. A part of it was used to charge off worthless notes held by the bank; part of it was used in balancing business of the

bank from day to day through the clearing house; some of it was used by customers of the Farmers State Bank buying drafts which were drawn on the Paola or Kansas City bank; some of it was drawn by the cashier and placed in a fictitious account which was later used by him, and possibly some of it was abstracted by him in other ways for his personal use.

Though appellant makes an extended argument concerning it, there is no question about the law applying to this case, nor is the inconsistency which he points out in the earlier and later decisions of this court as pronounced as he maintains. In some of the cases before the court certain details to be considered were not specifically mentioned, possibly because they did not arise in those cases or were conceded, and this may well account for the supposed discrepancy which he and others have attempted to point out. It is well settled that before one having a claim arising from a misappropriation, such as this, can have it decreed to be a trust fund and a first lien upon the assets in the hands of the receiver, he must show that the proceeds arising from the unauthorized appropriation of his property were a part, in some form, of the assets which came into the hands of the receiver. (*Peak v. Ellicott,* 30 Kan. 156, 1 Pac. 499; *Myers v. Board of Education,* 51 Kan. 87, 32 Pac. 658; *Hubbard v. Irrigating Co.,* 53 Kan. 637, 36 Pac. 1053, 37 Pac. 625; *Burrows v. Johntz,* 57 Kan. 778, 48 Pac. 27; *Insurance Co. v. Caldwell,* 59 Kan. 156, 52 Pac. 440; *Bank v. Bank,* 62 Kan. 788, 64 Pac. 634; *Investment Co. v. Bank,* 98 Kan. 412, 158 Pac. 68; *Tire & Rubber Co. v. Bank,* 109 Kan. 772; 204 Pac. 992; *Secrest v. Ladd, Receiver,* 112 Kan. 23, 209 Pac. 824.)

The trial court correctly stated the law applicable to the question as follows:

"As I understand the law, if the proceeds of the bonds went into the assets of the bank so as to increase the assets of the bank and consequently increase the assets going into the hands of the receiver, the plaintiff should have a preference."

The difficulty in this case is that the trial court did not find the proceeds of plaintiff's bonds were so used. After some discussion of the use of the proceeds of the bonds sold, the court said:

"As indicated, it is impossible to say definitely that all of the proceeds of these bonds passed into the assets of the bank, but certainly a very large portion of the proceeds of the bonds did pass into the assets of the bank."

From our examination of the record before us, we are unable to

say definitely whether the proceeds from plaintiff's bonds passed into the assets of the bank and thus were a part of those assets at the time the receiver took charge. The result is that this question has not been fully tried or determined by the court below and we are unable to determine it from the record presented.

Appellant concedes that the evidence shows two of these bonds were sold with other bonds April 23, 1921, but the amount sold is not shown. The proceeds from this particular sale of bonds were placed to the credit of the Farmers State Bank of Spring Hill in a bank in Kansas City, and appear to have been drawn from the Kansas City bank by the Farmers State Bank and transferred to the Miami County National Bank of Paola to pay drafts purchased of the Farmers State Bank by its customers drawn on the Miami County National Bank, and by the balancing of accounts between the banks in the ordinary course of business. If so, this money went into the assets of the Farmers State Bank.

The proceeds of some of the other sales of bonds made in Kansas City were transferred to the Farmers State Bank and used by it in charging off worthless notes held by the bank. It would seem to require no argument to establish the fact that if the bank held notes that were valueless, though carried on their books as valuable, money placed in the bank for those notes increased the live and valuable assets of the bank by the amount of the money so deposited.

That part of the judgment of the court below allowing plaintiff's claim against the receiver will stand, but the cause is reversed with instructions to grant a new trial upon the sole question of whether the proceeds arising from the misappropriation of plaintiff's bonds became a part of the assets of the bank and were in some form a part of the assets that came into the hands of the receiver.