No. 28,785.

THE PEOPLES STATE BANK OF LE ROY, *Appellee*, v. THE BURLINGTON STATE BANK et al., *Appellants*.

(277 Pac. 39.)

Opinion filed May 4, 1929.

*L. H. Hannen,* of Burlington, and *Elmer W. Columbia,* of Oswego, for the appellants.

*Roscoe W. Graves,* of Emporia, *Ray S. Pierson,* of Burlington, and *H. G. Leedy,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a bank to establish a preferred claim against the receiver of a failed bank. Plaintiff recovered, and the receiver appeals.

The Peoples State Bank of Le Roy had funds on deposit with the Peoples National Bank of Burlington. The Le Roy bank desired to transfer funds from Burlington National to Commerce Trust Company of Kansas City, Mo., which was the Le Roy bank's Kansas City correspondent. To effect the transfer, the Le Roy bank drew its draft on Burlington National for $4,000, and sent the draft to Commerce Trust for collection and credit. Commerce Trust sent the draft to the Burlington State Bank, of Burlington, "for returns." In the same letter other items were sent to Burlington State for re-

turns. Burlington State presented the draft, with the other items, to Burlington National. Burlington National presented items against Burlington State, and the result of the clearance was a balance of $4,580.27 in favor of Burlington State. Burlington National settled the balance by giving to Burlington State a draft for $4,580.27, drawn on Burlington National's Kansas City, Mo., correspondent, the Drovers National Bank. Burlington State sent the draft to its Kansas City, Mo., correspondent, the Commercial National Bank, for collection and credit. Drovers National paid the draft, and the proceeds were duly credited by Commercial National to the account of Burlington State.

As indicated, Commerce Trust forwarded to Burlington State for returns other items besides the Le Roy bank's draft for $4,000. Burlington State remitted to Commerce Trust by Burlington State's draft for $4,580.27 on Commercial National. The draft was received by Commerce Trust on April 7, 1927. Commerce Trust undertook to clear, but payment was refused by Commercial National. Burlington State suspended at close of business on April 6, and the deputy bank commissioner who took charge had stopped payment.

The first question is whether there was any basis for a "trust" relation warranting a preferred claim in favor of Le Roy bank upon the assets of defunct Burlington State.

Le Roy bank's draft on Burlington National was sent to Commerce Trust for collection and credit. Manifestly, Commerce Trust was agent for collection. Collection having been made, Commerce Trust would be authorized to keep the proceeds, crediting them to Le Roy bank. In that event the relation of debtor and creditor would exist between Commerce Trust and Le Roy, but that relation was never created.

Commerce Trust sent the draft to Burlington State for returns. Burlington State was manifestly an agent with limited authority— authority to collect and make returns. It had no power to transfer title to the collected fund, and a fiduciary relation existed on which a preferred claim in favor of Le Roy might be based.

The agent for collection made the collection. Burlington National took up the draft on it by draft on Drovers National, which was paid, and the proceeds were credited to the account of Burlington State in Commercial National. At the close of business on April 5 Burlington State's balance with Commercial National was $11,-221.06. On April 6 the draft on Drovers National was credited on

the account, other items were credited, the account was debited with various items, and at the close of business on April 6 the balance to the credit of Burlington State in Commercial National was $8,348.78, more than double the amount of the Le Roy item, and more than sufficient to pay the draft which Burlington State sent to Commerce Trust. The result is, when Burlington State suspended on April 6 it had in its possession a fund which might be considered in discovering a basis for a preferred claim in favor of Le Roy.

Agency of Burlington State to collect, collection, and possession by the agent of the proceeds of collection, fulfilled the primary requirements of a preferred claim in favor of Le Roy. Before such a claim could be recognized, however, it was necessary the fund be traced, in whole or in part, to possession of the receiver of Burlington State.

Burlington State was indebted to Commercial National on bills payable, and the indebtedness was secured by deposit of collateral notes. Commercial National applied the balance due Burlington State on account toward satisfaction of the bills payable, collected collateral notes to satisfy the remainder of the indebtedness, and returned to the receiver collateral notes no longer needed for security. The receiver has collected notes so returned to him in the sum of $7,550.16.

The assets of Burlington State were not increased by deposit of the proceeds of collection of the Le Roy item in Commercial National. Burlington State held those proceeds as agent for return to Commerce Trust, and not as assets available for distribution among creditors, whether the fund were kept in its own vault in Burlington or in custody of its correspondent, Commercial National, in Kansas City. As between Burlington State and Commercial National, Commercial National was privileged to apply the fund in satisfaction of Burlington State's bills payable. Appropriation of the fund by Commercial National, however, released collateral notes in its hands to the amount of the fund, and the released collateral notes were turned over to the receiver. But for appropriation of Burlington State's account by Commercial National, the receiver would have gotten back collateral notes to the amount of $3,550.16 only, and the result is, the portion of the estate of the failed bank which came into the hands of the receiver from Commercial National was indisputably augmented by the amount of the collected but unremitted Le Roy item.

It is not necessary to fortify the conclusion that Burlington State was a "trustee" by citation of decided cases. The decision of this court in the case of *Investment Co. v. Bank,* 98 Kan. 412, 158 Pac. 68, is sufficient authority for the conclusion that the estate which came to the receiver was enriched to the extent of the collected Le Roy item.

The receiver contends that Commerce Trust sent the draft on Burlington National to Burlington State for collection pursuant to the banking custom that the money collected was not to be shipped, but Burlington State might use the money, and remit by Kansas City exchange. The fallacy of the contention lies in applying the words "use the money" to a collect-and-remit transaction. The words are applicable to a collect-and-credit transaction, but not to the other kind. Le Roy did authorize Commerce Trust to use the collected money, by forwarding the items for "collection and credit." As indicated above, had the collected money reached Commerce Trust, the relation between it and Le Roy would have been that of debtor and creditor, and if Commerce Trust had then failed, Le Roy would have been a common creditor. The decision in the case of *Colorado & S. Rly. Co. v. Docking,* 124 Kan. 48, 257 Pac. 743, is instructive. In that case each forwarding bank authorized its collecting agent to keep the proceeds of collection. The Denver bank and the New England and National Bank did so directly by forwarding the item for collection and credit. The Federal Reserve Bank did so indirectly by forwarding the item to the American State Bank of Wichita for collection and remittance by draft on Kansas City. American State fulfilled its agency to collect by making collection, and it violated no trust by keeping the proceeds of collection. While it violated the instruction with regard to method of remittance, whatever method it used it was paying a debt to Federal Reserve. The intention involved, however, in the custom of banks to send items "for collection and remittance," or "for collection and returns," or "for returns," is that whatever method of remittance or return the collecting bank chooses, the method must result in producing cash or the equivalent of cash to the sender. This interpretation is adverted to in the opinion in the Colorado & Southern case, following the quotations from Ruling Case Law and Corpus Juris. There was testimony that, according to banking custom, a sender in the situation of Commerce Trust would expect Burlington State to remit by draft, and not to ship currency; but no

banker testified to a custom pursuant to which the sender would expect remittance by draft or other method which would fall short of accomplishing a transfer of funds as effectively as if currency were shipped.

The case of *State Bank v. State Bank*, 114 Kan. 463, 218 Pac. 1000, should be distinguished here. In that case Commerce Trust sent to Chetopa State Bank checks drawn on several Chetopa banks. Some of them, amounts not disclosed, were drawn on Farmers and Merchants State Bank of Chetopa. The checks were cleared, and clearance resulted in a balance due Chetopa State from Farmers and Merchants. Farmers and Merchants settled with its draft on its Kansas City correspondent, Commonwealth National. Before the draft was presented to Commonwealth National, Farmers and Merchants failed, and when the draft was presented payment was refused. An agency function on the part of Chetopa State in collecting the items which it had received did not exist because it paid for the items when it received them and became absolute owner of them. In the opinion it was said:

"In this case the Chetopa State Bank was the holder of checks drawn by various individuals upon the Farmers and Merchants State Bank. It presented these checks at the time of clearing for payment. It was in the same situation as though it had taken the checks direct to the Farmers and Merchants State Bank and there purchased a draft for them, or in the same situation as though it had purchased a draft from the Farmers and Merchants State Bank for cash. The great weight of authority is that under such circumstances the relation of debtor and creditor is created and not that of trustee and *cestui que trust.*" (*State Bank v. State Bank,* 114 Kan. 463, 467, 218 Pac. 1000.)

In this instance Burlington State did not become owner of the Le Roy draft on Burlington National. Burlington State was merely agent of Commerce Trust to collect and make return.

When the receiver took charge, Burlington State had in its vault the sum of $3,918.42. A first impression might be that if a preferred claim should be allowed, it should extend to the cash on hand only. The equitable remedy involved is theoretically a remedy *in rem.* In contemplation of equity, the proceeds of the collection made by Burlington State were like gold pieces in a bag, and Burlington State was bound to deliver the bag of gold to Commerce Trust. Burlington State's depositary, Commercial National, used the gold in such a way that it virtually purchased for the benefit of Burlington State some collateral notes which Commercial National held.

Those notes came into the hands of the receiver, have produced sufficient cash to pay the preferred claim, and the original realistic conception of a traced *res* is quite well exemplified.

The judgment of the district court is affirmed.