No. 30,151.

C. E. Eklund, Administrator of the Estate of George T. Shirley, Deceased, *Appellee*, v. The Fidelity State Bank, and Charles W. Johnson, as Receiver, etc., *Appellants*.

(5 P. 2d 791.)

Opinion filed December 12, 1931.

*T. R. Evans*, of Chanute, for the appellants.

*W. H. Anderson* and *G. M. Lamer*, both of Iola, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: In this action the plaintiff, as administrator of an estate, seeks to have his claim against the receiver of an insolvent bank adjudged a trust fund and declared a preferred claim against the funds in the hands of the receiver.

The answer of the receiver consisted of a general denial and a number of special denials putting in issue the matter of the fund being a trust fund, denying that it in any way increased or augmented the assets of the bank or the funds that ultimately reached the hands of the receiver and also plead waiver by the plaintiff of his right to make such claim, and also estoppel. These new issues being met by reply, the cause was tried to the court largely upon an agreed statement of facts which, after hearing some oral evidence, the court adopted as its findings of fact and added thereto other

findings and made conclusions of law in favor of the plaintiff and rendered judgment thereon, holding the claim of the plaintiff to be entitled to a preference as a trust fund, from which judgment the receiver appeals.

The agreed statement of facts, adopted by the court as findings of fact, shows in a general way that on the 8th of October, 1926, the probate court of Neosho county appointed the plaintiff herein, C. E. Eklund, administrator of the estate of George T. Shirley, deceased, instead of one John L. Robinson, that day discharged and removed by the court; that the Fidelity State bank of Chanute, for many years prior to March 5, 1926, had been a duly organized and existing state bank doing a banking business at Chanute, and that one John L. Robinson was a stockholder therein and was the duly qualified and acting president of the bank until the institution was closed and taken over by the banking department of the state of Kansas on June 14, 1926, at which time Charles W. Johnson was appointed receiver and Parks Helmick was appointed assistant receiver, and as such receivers they took possession and control on that date of all the assets of the bank.

The fourth and fifth agreed statement and findings of fact are as follows:

"4. That on March 5, 1926, the said John L. Robinson was, and for a long time prior thereto had been, the duly appointed, qualified and acting administrator of the estate of George T. Shirley, deceased, said John L. Robinson having been appointed by and acting under the probate court of Neosho county, Kansas, as provided by the laws of the state of Kansas. That on said 5th day of March, 1926, and for a long time prior thereto, said John L. Robinson as such administrator had in his custody and control belonging to said estate the sum of $2,200, and that said John L. Robinson as such administrator had said sum of $2,200 belonging to said estate deposited in the said Fidelity State Bank as an account under the name of John L. Robinson, administrator of the estate of George T. Shirley, deceased, and that all of said $2,200 was the property of and belonging to the said estate.

"5. That on March 5, 1926, said John L. Robinson as an individual was indebted to and owed said Fidelity State Bank the sum of $2,200, which said indebtedness was evidenced by two promissory notes signed by said John L. Robinson individually, one dated October 26, 1925, in the sum of $1,200 and the other dated January 11, 1926, in the sum of $1,000, both of said notes being payable to the said Fidelity State Bank, and that on said March 5, 1926, both of said notes were in and were owned by and were the property of the said Fidelity State Bank, and said sum of $2,200 was the debt and obligation of the said John L. Robinson individually. That on said March 5, 1926, said John L. Robinson as the administrator of the said estate of George T. Shirley, de-

ceased, drew a check on the account of John L. Robinson, as administrator, payable to Jno. L. Robinson or bearer, individually, and cashed said check in the said Fidelity State Bank and delivered and paid said $2,200 to said Fidelity State Bank; and the said John L. Robinson took up the two above-mentioned notes in the sum of $1,200 and $1,000, same being the individual notes made to the bank as aforesaid. That the said John L. Robinson withdrew said funds from the said estate and paid said money to said Fidelity State Bank in payment of his said notes without any authority or without the knowledge of the probate court or any order made by the probate court authorizing him to do so, and without any knowledge or authority of any of the heirs of said estate or the knowledge or authority of any of the interested parties in and to said estate; and said money has not been paid to said estate."

The other agreed statement and findings of fact, not here quoted or the substance given above, concern the matter of conviction of John L. Robinson of embezzlement, the waiver by the plaintiff of his rights to recover against the receiver and the facts involved in the question of estoppel. During the trial an additional stipulation was made in the record as follows: "that the records of the Fidelity State Bank for each and every date commencing with March 5 and ending with June 14, 1926, showed that there was more than $2,200 in cash in the bank."

The thirteenth, fourteenth and fifteenth findings of fact as made by the court after the hearing of the testimony are as follows:

"13. The court further finds that it was admitted at the trial of this case in open court by all parties that said sum of $2,200 was at all times a trust fund; and also that at all times after said March 5, 1926, there was in the cash assets of the said Fidelity State Bank a sum equal to or exceeding said $2,200.

"14. The court further finds from the evidence introduced at the trial of this cause that a sum equal to or exceeding the said sum of $2,200 passed into the hands of the receivers, defendants herein, at the time of their appointment and continuously thereafter remained in the hands of the said receivers, and that there is now in the hands of said receivers sufficient funds to pay said trust fund to plaintiff in full.

"15. That said John L. Robinson was convicted in Neosho county on a criminal charge of embezzling the said sum of $2,200 by placing same in the said Fidelity State Bank, the same being the funds involved in this action, and was sentenced and confined in the penitentiary at Lansing, Kan."

The court then made the following eight conclusions of law:

"1. That the $2,200 which was on deposit in the Fidelity State Bank was, is and has been at all times the property of the Shirley estate.

"2. That said $2,200 was a trust fund in the hands of the Fidelity State Bank, and the said $2,200 or its equivalent in money passed into the hands of the defendant receivers herein and is now so held by them as a trust fund.

"3. That said \$2,200 augmented and increased the cash in the Fidelity State Bank and augmented and increased the amount of cash passing into the hands of the defendant receivers in the sum of \$2,200.

"4. That the Shirley estate never was a creditor of the Fidelity State Bank at any time.

"5. That plaintiff was not required to file any claim for said trust fund under order of the district court of Neosho county, Kansas, fixing June 1, 1929, as the last day upon which claims against the receivers of said Fidelity State Bank might be filed, and plaintiff is not estopped from prosecuting this action on account of his failure to file claim against the receivers before the bringing of this action.

"6. That the embezzlement of said \$2,200 by John L. Robinson passed no title or ownership to the Fidelity State Bank in said fund.

"7. That the Fidelity State Bank had knowledge of all of said illegal and embezzling transactions through John L. Robinson, its president and active manager.

"8. That judgment should be rendered herein against the defendants and in favor of the plaintiff in the sum of \$2,200 with the costs of this action, and that same be paid in full by the receivers out of funds now in their hands."

For reasons that appear in the record we must accept the position taken by the trial court as to the fund in question being a trust fund, and we start the consideration of this appeal with that as a basis and will consider the other requirements prescribed in order for the fund to be a preferred claim. They are (1) that this fund augmented the assets of the bank, and (2) that the increase reached the hands of the receiver. The first thing done in this case, which is urged as a matter sustaining the contention of the fund being entitled to a preference, was the act of the administrator, John L. Robinson, who at the same time was president of the bank on March 5, 1926, when he drew his check on his account as administrator payable to himself individually or bearer, withdrawing these funds and paying them to the bank to take up his two notes in the same amount. Finding No. 4, quoted above, shows that for a long time prior to March 5 he had these funds on deposit in this bank. So when the first act of misconduct occurs we find these funds properly deposited in the bank to the credit of the administrator, where they had been for a long time. This is quite different from the facts in many cases cited on this question, where the funds came into the bank irregularly or fraudulently. The court nowhere in its findings states that the assets of the bank were increased by this illegal conduct of the administrator and president. The finding is that the cash was increased. This matter was brought to the attention of the trial court by the motion of the defendant asking the court to

make findings and conclusions as to the assets of the bank being increased, and that the notes of Robinson were being carried on the books of the bank as assets at their face value. This request was refused by the court, so we are compelled to conclude that the court, with the agreed statement of facts, the oral evidence and this request before it, purposely and intentionally refrained from finding there was any increase in the assets of the bank, but instead thereof found there was an increase in cash and found nothing as to the notes being an asset of the bank. We think the findings of the court go as far as the agreed statement of facts would permit, but there is a great difference between an increase of cash and an increase of assets. Any customer who calls and pays his note, whether it be a good note or a frozen asset, increases the cash of the bank if he brings the money or check from another source, but he does not increase the assets of the bank, the bank having the cash in lieu of the note. If the president of the bank had drawn a check on his own individual account in the bank with sufficient fund on deposit to meet it, and thus honestly paid his two notes, the situation would have been no different either as to augmenting the cash or the assets of the bank.

It is argued that when this money was transferred it went into the funds of the bank, whereas it had previously been funds of a depositor. Practically all funds loaned by banks to its customers are depositors' funds. In conducting the business of a bank no such distinction is made or observed. Immediately before this illegal transaction took place these funds were regularly on deposit, and the relation of debtor and creditor existed between the bank and this estate. The bank had this $2,200 in with its deposits. They were feloniously withdrawn as deposits and used to purchase two notes of equal face value. The bank then had $2,200 more in cash but it had parted with notes of $2,200 face value. Wherein have the assets been increased? Cash is usually a very small part of the assets of a bank. It has never been the rule in this state that the question of a claim being preferred or not was to be determined by the increase of the cash on hand. Both parties refer to the case of *Investment Co. v. Bank,* 98 Kan. 412, 158 Pac. 68, which is the recognized authority on this subject in this state. Appellee says it is not in point for the reason that the appellee brings himself within the rule of *Bank v. Bank,* 62 Kan. 788, 64 Pac. 634, by his evidence showing the two notes taken up were worthless. Counsel doubtless

relies upon the use of the expressions found in the opinion when speaking of assets of the bank "augmented and bettered" and "enlargement and betterment," but there was no question in that case about better paper or assets, no reference to any paper being better or worse. There was absolutely no comparison of assets involved in the case. The opinion shows the expression used was from the argument or contention of one of the parties. In that case the collecting bank made collection of the check for $1,400 by following the custom among bankers of exchanging such checks on another local bank for checks on itself and this time the checks the collecting bank took back on itself exceeded the $1,400 collected by more than $600, which difference it promptly paid by cashier's check. The collecting bank insisted it was $600 poorer by reason of the day's transaction, but the court held that by making the collection it had increased and augmented the assets of the bank. It was simply a collection for another bank and the assets of the collecting bank were augmented by the $1,400 so collected. There being no reference in that case as to worth or value of any of the paper involved in the transaction, we do not see how outside of the use of the word "betterment" it can apply to the plaintiff's testimony in this case as to the notes being worthless.

Another point in this case was the statement in the opinion which distinguishes it from the instant case in that the relation of the parties in it was that of principal and agent and not of debtor and creditor, as is generally the case where a deposit is involved.

The investment company case, *supra*, had its inception as did this case in the fraudulent conduct of the president of the insolvent bank, and the court considered that feature together with the question of the assets being augmented and reaching the hands of the receiver. The entire opinion is applicable to the question here involved, but we quote only the syllabus:

"The owner of money fraudulently obtained and used in the business of an insolvent bank, by its cashier, is not entitled to repayment by the receiver, in preference to other creditors, except so far as he shows that the assets which reached the hands of the receiver were larger by reason of such transaction than they would otherwise have been; it is not enough to show that the assets of the bank were increased, or that the money was used in reducing its indebtedness." (*Investment Co. v. Bank*, 98 Kan. 412, syl., 158 Pac. 68.)

Many of the cases cited by appellee in support of the claim being entitled to a preference are discussed and considered in the two

cases above cited, and it is only fair to call attention to the point of how the funds in question first reached the bank.

In the case of *Myers v. Board of Education,* 51 Kan. 87, 32 Pac. 658, the school district treasurer, at the same time manager of the bank, wrongfully and without authority placed the school funds in the bank. The assets were augmented and a preference was allowed.

In *Peak v. Ellicott, Assignee,* 30 Kan. 156, 1 Pac. 499, a borrower was induced to pay his note before maturity and take a receipt therefor, the note being away in the hands of other parties. The money was appropriated to the use of the bank and the note was never paid. The court held the relation of principal and agency existed and allowed a preference.

In *Hubbard v. Irrigating Co.,* 53 Kan. 637, 36 Pac. 1053, a trustee without authority mingled the trust funds with his own and the court allowed the claim to follow the property and be reclaimed from the administrator of the deceased trustee.

In *Reeves v. Pierce,* 64 Kan. 502, 67 Pac. 1108, the funds of a ward were invested in bank stock of a bank in which the guardian was an officer, all without authority or right, and it was held the funds could be followed into the hands of the purchaser of the assets of the bank with notice.

In *Clingman v. Hill,* 104 Kan. 145, 177 Pac. 530, a guardian wrongfully diverted the funds of the estate by investing them in land with the title in the name of his wife, who paid nothing for the same. It was held the fund could be followed and recovered.

In *Secrest v. Ladd, Receiver,* 112 Kan. 23, 209 Pac. 824, a special deposit was placed in a bank to be used only in payment of certain shares of the capital stock of the bank, but the bank misappropriated the money and used it in its general banking business, thus augmenting its assets, and it was held the owner could follow and reclaim it from the augmented assets in the hands of the receiver of the bank.

These references are made to the foregoing cases cited by appellee to show that they each and all had a beginning in funds actually reaching the bank or trustee in a way that augmented or increased the assets, and in nearly all of them the relation of principal and agent existed, and none of them began with the misuse of a general deposit where the earlier relation was that of debtor and creditor.

Two other early decisions are cited: *Insurance Co. v. Caldwell,*

59 Kan. 156, 52 Pac. 440, and *Burrows v. Johntz*, 57 Kan. 778, 48 Pac. 27. In the latter it was said:

"To render an assignee liable to account to a party who had placed money in the hands of his assignor as for a trust fund, it must appear either that the fund actually came into the hands of the assignee, or that it went to swell the estate of the assignor, which he in fact received." (Syl. ¶ 2.)

The decision in the investment company case, *supra*, has been followed and approved in the following cases: *Nelson v. Paxton, Receiver*, 113 Kan. 394, 214 Pac. 784; *Honer v. State Bank*, 114 Kan. 123, 216 Pac. 822; *Baily v. Paxton, Receiver*, 115 Kan. 410, 223 Pac. 278; *City of Spring Hill v. Paxton, Receiver*, 115 Kan. 412, 223 Pac. 283; *Kirby v. Wait*, 120 Kan. 400, 243 Pac. 1058; *Vincent Grain Co. v. Docking*, 124 Kan. 391, 260 Pac. 610; and *Peoples State Bank v. Burlington State Bank*, 128 Kan. 274, 277 Pac. 39.

We think the trial court erred in basing its judgment of preferred claim on a finding that the cash of the bank which reached the hands of the receiver was augmented, when it declined and refused to find that the assets had been augmented or increased and as such reached the hands of the receiver. The augmenting of the cash in the bank and later in the hands of the receiver is not the correct test, and the agreed statement of facts and other evidence in this case will not sustain and support a finding that the assets had been augmented by the transaction here involved. Having reached this conclusion, no good purpose could be served by considering the questions of waiver and estoppel.

The judgment is reversed and the cause is remanded with directions to set aside the judgment heretofore rendered giving plaintiff a preference claim, and render judgment for defendants for costs.