No. 31,402

W. B. Sefton, *Appellant,* v. The Farmers State Bank of Sedgwick, and Charles W. Johnson, as Receiver, etc., *Appellees.*

(28 P. 2d 752.)

Opinion filed January 27, 1934.

*W. H. von der Heiden, A. E. Morgan* and *C. A. Morgan,* all of Newton, for the appellant.

*Robert R. Hasty* and *George E. Hasty,* both of Wichita, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is a proceeding to have a claim against the receiver of a failed bank allowed as a preferred claim. The trial court allowed it as a common claim in the sum of $9,000. Claimant has appealed, and contends that under the evidence $6,000 of the amount should have been allowed as a preferred claim. The receiver filed a cross appeal and contends the claim should not have been allowed in any sum, even as a common claim.

The facts disclosed by the pleadings, stipulated in writing and agreed to in open court, may be summarized as follows: The Farmers State Bank of Sedgwick, with Charles B. Harling, president, and H. B. Harling, cashier, as its principal active officers, functioned as a state bank for many years prior to May 27, 1931, on which date it failed and a receiver was appointed. The claimant, W. B. Sefton, was a customer of the bank. About October 5, 1918, Sefton left with the bank for safe-keeping a United States Fourth Liberty loan bond for $1,000 and received the bank's receipt therefor. On July 7, 1927, he left with the bank for safe-keeping four bonds of school district No. 168, Sedgwick county, for $1,000 each, and on July 20, 1927, three more of such bonds for $1,000 each,

and on the same day two Marion county funding bonds of $500 each. The receipts given by the bank, except the first, described the bonds by issue, number and amount, stated they were received "for safe-keeping in our bank vault," and contained this paragraph:

"This bank will give the same care to property left for safe-keeping that it does to its own property, but beyond that does not assume responsibility. The above property to be delivered only to the person named hereon or his legal representative upon return of this receipt."

On December 13, 1927, the bank sold to the Guarantee Title & Trust Company of Wichita, six of the above-mentioned bonds for $1,000 each, for their face value with accrued interest, under a repurchase agreement, which it exercised April 2, 1929. On June 5, 1929, the bank sold to the State Reserve Bank of Wichita five of the $1,000 bonds, for which it received $5,035.73. With this sale there was a repurchase agreement, which was not exercised. On October 19, 1929, the bank sold to the Brown-Crummer Company of Wichita two of the $1,000 bonds and received $2,000 therefor, and on October 29, 1929, the bank sold to the same company the two Marion county bonds of $500 each and received $891.77 therefor.

W. B. Sefton never received from the bank any of the bonds he left with it for safe-keeping. He did not know any of the bonds had been sold by the bank, and received none of the proceeds thereof. None of the bonds were in the bank when it failed and was taken charge of by the receiver.

On learning of the W. B. Sefton bonds and how they had been received and handled by the bank, the receiver presented an itemized claim to the bonding company, surety on the bonds, of the active officers of the bank, Charles B. and H. B. Harling. One item, No. 10 of this claim, was for $6,000 of the Sefton bonds. After an investigation the surety company recognized its liability on certain items of the claim presented and paid to the receiver substantially. the full amount of the bonds. Among the items of the claim so recognized and paid was No. 10 for $6,000 of the Sefton bonds.

Taking up the cross appeal of the receiver, in which it is contended the claim should not have been allowed in any sum, even as a common claim. In support of that contention it is argued that before the claimant should be entitled to have his claim allowed it was essential that he establish: (1) Ownership of the bonds, (2) the placing of the bonds with the bank for safe-keeping, (3) the conversion thereof by the bank, (4) the time of conversion, (5)

demand and refusal to surrender the bonds, and (6) the damages sustained by failure to deliver the bonds on demand. It is conceded that the first three of these requirements have been met. As to the fourth it is argued that the time of conversion is not fixed, when the bank first sold part of the bonds in 1927, when it repurchased them in April, 1929, and when it later sold them, some in June and others in October, 1929; and in support of the contention that the date should be fixed, *Auld v. Butcher*, 22 Kan. 400, is cited. That case dealt with the statute of limitations. Here the claim was filed with the receiver within one year after his appointment, and no question concerning the statute of limitations was raised. It is argued that there has not been a specific demand for the bonds and refusal to deliver them. We regard the presenting of the claim against the receiver as a sufficient demand. It is true that was not a demand for the specific bonds, but at the time it was made the parties knew that the bonds had been disposed of and could not be delivered; hence, it was futile to demand the delivery of the specific bonds. A demand for their value was appropriate.

It is next argued that the amount plaintiff is entitled to recover is not clearly established, since there was not a showing of the value of the bonds. It is argued that the face value may or may not be their real or market value. In the trial court it appears that the bonds were treated as being worth their face value, which was stipulated. Nothing in the record indicates that anyone connected with the trial contended that the bonds were worth more or less than the face value, and in its judgment the trial court treated the face value of the bonds as being their value. Were we to undertake to hold otherwise we would have nothing on which to base our ruling. We find no error in the ruling of the trial court that the claim should be allowed.

Turning now to the question as to whether any of it should have been allowed as a preferred claim. Before such a claim can be allowed it is essential that the sum sought to be allowed as a preferred claim is a trust fund, and that it passed into the hands of the receiver. (*State Bank v. State Bank*, 114 Kan. 463, 218 Pac. 1000.) Clearly, the first of these propositions is well established. (*Schoen v. Johnson*, 134 Kan. 612, 7 P. 2d 117.) The bonds were left with the bank for safe-keeping, to be returned. The only question remained: Did any part of these funds pass into the hands

of the receiver? It was stipulated that as the bonds were sold the amount paid for their purchase passed to the bank. How the money was used by the bank before it failed is not shown, but the fact that the bank had taken and used the bonds, and thereby made itself liable to W. B. Sefton for them, was one of the items presented by the receiver to the surety on the bonds of the bank's officers, and by reason thereof the receiver received from the surety company $6,000. It is stipulated in this case that the "surety company made payment to the receiver . . . said item 10 of the claim of said receiver in the sum of $6,000." In this situation the receiver is not in position to say that he did not receive $6,000 of, or because of, the trust fund which Sefton had left with the bank. (*Investment Co. v. Bank,* 98 Kan. 412, 158 Pac. 68.)

The judgment of the court below is reversed with directions to allow $6,000 of the claim as a preferred claim and the remaining $3,000 as a common claim.

HUTCHISON, J., not sitting.