**JOHNSON et al. v. MORRIS.**

**ROYSTER et al. v. MORRIS.**

Nos. 3802, 3803.

United States Court of Appeals
Tenth Circuit.

May 6, 1949.

Rehearing Denied June 15, 1949.

Phineas Rosenberg, Kansas City, Mo. (H. W. Goodwin, Wichita, Kan., and Tyree G. Newbill, Kansas City, Mo., on the brief), for appellants.

William Tinker, Wichita, Kan., for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question in these appeals is whether the claims of the appellants[1] against the Culver Aircraft Corporation, a bankrupt, in bankruptcy, are entitled to preference and whether the Referee erred in allowing them only as common claims. It is conceded that the funds which were deposited by these claimants with the Culver Aircraft Corporation, and out of which their claims arose, were trust funds, that they were misappropriated by Culver, co-mingled with its assets and used in its business.

A brief statement of the facts will suffice to present the question. Culver Aircraft Corporation was engaged in the manufacture and sale of airplanes. In the course of its business, it sold airplanes to various customers, including these appellants, for future delivery. At the time these orders were taken, a deposit of $500.00 was required from each purchaser. It was agreed that these deposits were to be placed in a special account to remain therein until the plane was manufactured and delivered to the purchaser. A special account known as Account Number 10 was opened in the Fourth National Bank of Wichita, Kansas, in which these special deposits were placed. Total deposits of $204,000.00 were made and $4,000.00 was properly withdrawn from the account, leaving trust funds totaling $200,-000.00. Between the first day of June, 1946, and the 10th day of July, 1946, the entire sum of $200,000.00 was wrongfully withdrawn from the account by Culver, was deposited in the general banking account of the corporation in the Fourth National Bank of Wichita, Kansas, and apparently was thereafter used in the regular course of Culver's business in the same manner as the rest of the funds on deposit in that account. As of June 1, 1946, Culver had on deposit in its account in the Fourth National Bank of Wichita, Kansas, $201,289.24, and from that date until November 1, 1946, prior to bankruptcy, it deposited in its account additional sums totaling $2,249,526.11. These additional deposits were made up of this special fund of $200,000.00, money borrowed by Culver from the Fourth National Bank of Wichita, Kansas, on open account, in the sum of $800,000.00, and receipts from general business activities of the corporation. During this same period of time, Culver expended $2,456,702.42, leaving at the date of bankruptcy an overdraft of $5,887.07. Concededly none of these trust funds came into the hands of the trustee in bankruptcy in the form of cash nor can they be traced into any specific property or co-mingled property which came into the hands of the trustee.

During this same period of time the corporation expended $154,195.27 for Federal taxes of various kinds; $3,522.58 for unemployment tax to the State of Kansas; $50,000.00, retirement of preferred capital stock; $350,000.00, payment of loan to the bank; $30,500.00 payment to dealers' deposit; and $1,107,242.42 for the purchase of materials, equipment and supplies.

On May 31, 1946, there was a productive material inventory of $290,239.87, and in November there was a material inventory of $478,150.84, of which $397.99 was received after bankruptcy. This shows an increase in the productive material inventory of $187,512.98 from June 1 until bankruptcy. The bankrupt assets in the hands of the trustee consisted of the materials as inventoried, approximately $107,439.00 from the sale of seventy-one planes completed and sold after bankruptcy, and $389,000.00 refund of taxes from the United States Government.

Based upon these facts the Referee held that the evidence failed to establish that

---

[1] The two claims of appellants were allowed in the total sum of $14,825.00.

any of the trust fund, either in its original or converted form, is identifiable property in the hands of the trustee. He accordingly denied appellants' claims as preferred claims and allowed them as common claims. On petition for review, the District Court affirmed the Referee, and this appeal followed.

The Referee based his conclusion that appellants had not made out a case entitling them to preference on the federal law as announced by this court in Kershaw v. Jenkins, 10 Cir., 71 F.2d 647, while the trial court, in affirming the Referee, applied the Kansas law.

We do not find it necessary to decide whether the law of Kansas or of the United States is controlling because in either event the decision must be the same. The Federal rule is stated by this court in Kershaw v. Jenkins, 10 Cir., 71 F.2d 647, and since all parties seem to concede that this case clearly states the Federal rule, the pertinent portions of the opinion are set out in footnote Number 2.[2] It is thus not sufficient for one seeking a preference to merely show that his property was wrongfully taken by the bankrupt, co-mingled with his other assets and used in his business. He must trace his "property in its original or converted form into specific or identifiable property in the possession of the receiver." And, it is not enough merely to show that the trust fund or property "went into the assets" of the bankrupt, "it must be traced into the possession of the receiver," [3] either in its original form or it must be clearly shown that it was converted into property which came into the trustee's possession. That it cannot be specifically pointed out because it is co-mingled with like and indistinguishable property in the trustee's hands is not fatal to the asserted claim. It is sufficient if the claimant can clearly show that his property went into the common mass of property that came into the hands of the trustee. This, of necessity, places a heavy burden upon one seeking a preference although it is not an insurmountable burden, but in any event it is a burden which must be carried by one who asks a court of equity to give him his full portion out of a common pot, thus further reducing the meager amount for distribution among others who also have a right to their due portion therefrom.

An analysis of the Kansas cases leads to the conclusion that this also is the Kansas rule. In the early case of Arnold Investment Company v. Citizens State Bank, et al., 98 Kan. 412, 158 P. 68, 69, L.R.A. 1916F, 822, the Supreme Court of Kansas, in substance, laid down the same principles as enunciated in the Federal rule, and in denying the claim for preference, said:

"But its claim to a preference must be ceeds thereof. But no recovery on that basis could be had without showing that denied because it has failed to trace any of its funds into the hands of the receiver. * * * To support its claim of priority the plaintiff was not required to show that any of the specific funds obtained from it reached the receiver, or to identify any particular property held by him as the pro the assets that came into the hands of the receiver were larger than they would have been but for the wrongful obtaining of the plaintiff's money. It is not enough to show that the assets of the bank were increased by the deposit to its credit of the money obtained from the plaintiff. That condition necessarily results whenever money is paid to a bank, whatever may afterwards become of it. It is not enough that what may be called the net value of the insolvent estate to be ad-

---

[2] Kershaw v. Jenkins, 10 Cir., 71 F.2d 647, 649.

We stated that one who seeks to establish a preferred claim "must trace the trust fund or property in its original or converted form into specific or identifiable property in the possession of the receiver. The trust res may be traced for that purpose by proof clearly showing that the assets of the bank were augmented through the transaction, and,

further, that the augmented fund was not depleted intermediate the transaction and insolvency of the bank to a sum less than the amount of the claim. * * * So it is not enough merely to show that the trust existed and that the trust fund or property went into the assets of the bank. It must be traced into the possession of the receiver."

[3] The above quotations are from the Jenkins case cited in Footnote 2.

ministered has been increased—that the discrepancy between the liabilities and assets is diminished; that the percentage disbursed in dividends shall be enlarged. The test is whether the money which was wrongfully obtained has been so disposed of as to increase the fund that reaches the hands of the person charged with administering the insolvent estate, to be by him distributed among the creditors."

And again the court said:

"But if it used the money to pay debts of Turner, or even to pay valid indebtedness of the bank, that circumstance does not make a preferred creditor of the plaintiff."

The Arnold Investment Company case has been cited and quoted with approval in a great number of Kansas cases too numerous to set out in detail. In footnote four we have set out a few of the cases which have quoted the rule laid down in the Arnold Investment Company case with approval.[4]

In the late case of Woods v. Duval, 151 Kan. 472, 99 P.2d 804, the rule was reaffirmed, the court saying:

"The rule that where a fund has been wrongfully or erroneously disbursed equity will follow it as far as it can be traced and will impress a trust on it for the benefit of the parties entitled thereto cannot be applied to impress a lien on property not acquired with the money sought to be followed nor traceable to it."

The fact that the company's inventory of $290,239.87, at the time of the conversion of the trust funds had increased to $477,751.85, at the time of bankruptcy, and the further fact that federal taxes which had been paid after the wrongful conversion of appellants' funds had been refunded during bankruptcy, in the sum of $389,000.00, are advanced in support of appellants' contention that the wrongful appropriation of their funds increased the assets which reached the trustee's hands. But there is no showing that appellants' funds were used in paying these taxes or that any part of their money went to purchase any of the property constituting the inventory which came into the hands of the trustee. It must be remembered during this time the bankrupt borrowed $800,000.00 from the Fourth National Bank of Wichita, Kansas. This money was placed in the same general fund in which these trust funds were placed. No one can say whether appellants' funds were used in paying taxes and purchasing the property which went into the inventory or whether the bank's $800,000.00 was used for this purpose, or whether the funds used therefor came from the sale of merchandise. The conclusion that the use of appellants' trust funds went for these purposes can only be reached by surmise and speculation and that is not sufficient under the burden resting upon appellants, both under the State and the Federal rule, requiring them to trace the trust funds in their original or converted form into specific or identifiable property in the possession of the trustee.

It is not enough to show that the trust funds went into the assets of the bankrupt, but it must be further shown that such funds came into the possession of the trustee either in their original form or in a converted form of one kind or another. Appellants completely failed to make such a showing and the judgment of the trial court is therefore affirmed.

PHILLIPS, Chief Judge (concurring).

I agree that the application of either Federal law or the law of Kansas requires an affirmance but I deem it appropriate to state my views with respect to the applicable law.

The question is whether under the facts the appellants had an equitable lien on the assets of the bankrupt when they passed into the hands of the trustee in bankruptcy.[1]

Whether the appellants had an equitable lien upon the assets of Culver immediately prior to the inception of bankruptcy was a question of state law. If they did not have such a lien under state law, the event

---

4 Kirby v. Wait, 120 Kan. 400, 243 P. 1058; Eklund v. Fidelity State Bank, 134 Kan. 342, 5 P.2d 791; Sefton v. Farmers' State Bank of Sedgwick, 138 Kan. 776, 28 P.2d 752; Snodgrass v. Johnson, 141 Kan. 204, 40 P.2d 383.

1 McCallum v. Anderson, 10 Cir., 147 F.2d 811, 814; Restatement of the Law, Restitution, § 210.

of bankruptcy certainly would not create such a lien. Accordingly, it is my conclusion, which is supported by authority, that whether a creditor of a bankrupt has an equitable lien on the assets of the bankrupt estate which pass into the hands of the trustee must be determined by local law.[2]

However, although as between the claimant and the bankrupt, the claim is valid under state law, the court of bankruptcy under its equity powers in distributing the assets of the bankrupt estate may subordinate such claim to the claims of other creditors, where the claimant has been guilty of inequitable conduct, justifying such subordination.[3]

Here, the appellants traced the trust funds into the general bank account of Culver Aircraft Corporation, the bankrupt. The proof showed that all of the trust funds so traced into the general bank account of Culver and a large amount of additional funds deposited in such general bank account were checked out so that the account was overdrawn prior to bankruptcy, but the proof wholly failed to show that such funds were employed to purchase assets which came into the hands of the trustee, either in their original or converted form. For aught that appears, all of the trust funds may have been disbursed in payment of debts of Culver or in paying current expenses of Culver prior to bankruptcy. The trust funds might have been checked out immediately in payment of debts of Culver. Indeed, the reasonable inference is that they were. And the fact that tax claims were afterwards paid and refunded did not establish that the trust funds were used to pay the tax claims. That disbursement of the trust funds in payment of the debts of Culver or in payment of the current expenses of Culver did not constitute augmentation or betterment of the assets which passed into the hands of the trustee is settled law in Kansas.[4]

The burden of proof was upon the appellants to show augmentation in order to establish their liens.[5] That, they failed to do. It follows that they had no lien under the law of Kansas and bankruptcy ensued. Ensuing bankruptcy did not enlarge their rights.

For the additional reasons stated above, I concur.

---

[2] In re Robert Jenkins Corporation, 1 Cir., 17 F.2d 555, 556; Beacon Trust Co. v. Dolan, 1 Cir., 27 F.2d 247, 248; In re Goodhue Motor Co., D.C.Md., 28 F.2d 402, 404; In re Hagin, D.C.La., 21 F. 2d 433, 434; In re McAusland, D.C.N.J., 235 F. 173, 179; Remington on Bankruptcy, 5th Ed., Vol. 4A, § 1725. Cf. Mitchell v. Bowman, 10 Cir., 123 F.2d 445.

[3] Prudence Realization Corporation v. Geist, 316 U.S. 89, 93, 62 S.Ct. 978, 86 L.Ed. 1293; Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281.

[4] Arnold Investment Co. v. Citizens' State Bank, 98 Kan. 412, 158 P. 68, 70, L.R.A.1916F, 822; Cheney v. Johnson, 135 Kan. 521, 11 P.2d 709, 711; Secrest v. Ladd, 112 Kan. 23, 209 P. 824, 825; Snodgrass v. Johnson, 141 Kan. 204, 40 P.2d 383, 384.

[5] Schuyler v. Littlefield, 232 U.S. 707, 712, 34 S.Ct. 466, 58 L.Ed. 806; Blumenfeld v. Union Nat. Bank, 10 Cir., 38 F.2d 455, 456.